**Lillian Virginia DUNN, a/k/a Lillian Simmons, petitioner, Appellant,**

**v.**

**STATE of Minnesota, Respondent.**

**No. C9–97–1253.**

Supreme Court of Minnesota.

May 14, 1998.

See also, 499 N.W.2d 37.

Kai J. Lahti, Apple Valley, for appellant.

Hubert H. Humphrey, Atty. Gen., Susan Gaertner, Ramsey County Atty. by Darrell C. Hill, Asst. Ramsey County Atty., for respondent.

## OPINION

TOMLJANOVICH, Justice.

■ In her third petition for postconviction relief, appellant Lillian Virginia Dunn has asserted claims of prosecutorial misconduct and ineffective assistance of trial counsel, stemming from her convictions for first-degree felony murder and kidnapping.[1] The postconviction court summarily denied her petition, and we affirm.

We have recounted the facts of this case on prior occasions. *See Dunn v. State*, 486 N.W.2d 428, 430–31 (Minn.1992); *see also Dunn v. State*, 499 N.W.2d 37 (Minn.1993). For purposes of our decision today, it is sufficient to note that Dunn was convicted of first-degree felony murder and kidnapping in the May 1989 shooting death of Marlizza McIntyre. At root, the issue at trial was whether and to what extent Dunn was involved in McIntyre's death. Two witnesses testified that Dunn deliberately pulled the trigger, while Gary Roby (or someone resembling him) pinned McIntyre to the floor. A third witness stated that she came into the room after hearing "popping" sounds. She saw Dunn standing over McIntyre with a gun in her hand, and she saw Roby standing near Dunn and McIntyre.[2] Roby was tried and convicted of premeditated first-degree murder and felony murder in August 1989. *See*

*Roby v. State*, 531 N.W.2d 482, 482–83 (Minn. 1995). Dunn was convicted in October 1989.

Dunn contends that the prosecutor committed misconduct during his closing argument. According to Dunn, the prosecutor in Roby's trial argued that the jury should *not* believe the three witnesses who testified that they saw Dunn with the gun, while at Dunn's trial, the prosecutor purportedly elicited the same testimony from the three but argued that the jury *should* believe their testimony. With respect to the ineffective assistance of trial counsel claim, Dunn asserts that her trial counsel should have attended or reviewed the transcript of Roby's trial and challenged the purported prosecutorial misconduct. Hence, Dunn concludes, the postconviction court abused its discretion in dismissing her petition. The State counters that the issues raised by Dunn already have been addressed by this court or were known to Dunn when the first petition was filed. Dunn justifies the delay by asserting that: 1) she and her postconviction counsel did not know of the purportedly inconsistent arguments until now; and 2) her counsel in the first two postconviction proceedings would have had no reason to discover these issues.

■ Claims of prosecutorial misconduct and ineffective assistance of trial counsel generally may not be raised in a petition for postconviction relief if the petitioner knew of the claim at the time of an earlier petition or direct appeal. *See Black v. State*, 560 N.W.2d 83, 85–86 (Minn.1997). Moreover, "delay in seeking relief is * * * relevant [to] * * * determining whether that relief should be granted." *Fox v. State*, 474 N.W.2d 821, 826 (Minn.1991). On review of a postconviction proceeding, this court determines only whether sufficient evidence supports the postconviction court's findings, and it will not disturb the lower court's decision absent an abuse of discretion. *See Hodgson v. State*, 540 N.W.2d 515, 517 (Minn.1995) (citing

---

1. Dunn raised several other issues in her petition for postconviction relief. However, only this issue was briefed on appeal. Hence, those issues are waived. *See State v. Grecinger*, 569 N.W.2d 189, 193 n. 8 (Minn.1997).

2. Another witness testified that Dunn restrained McIntyre as Roby shot her, and in her statement to police, Dunn said that the gun accidentally discharged several times as she tried to intervene in a struggle between Roby and McIntyre. This evidence is immaterial to our resolution of the appeal.

*Scruggs v. State*, 484 N.W.2d 21, 25 (Minn. 1992)).

 Approximately seven and one-half years passed from Dunn's conviction to the filing of her third petition for postconviction relief. *Cf. Rairdon v. State*, 557 N.W.2d 318, 325 (Minn.1996) (concluding that a petitioner's allegations of prosecutorial misconduct were insufficient to warrant a new trial, particularly in view of his nine-year delay in petitioning for postconviction relief). As the postconviction court noted, Roby's trial took place well before Dunn's trial. Dunn's trial counsel plainly had reviewed the transcript of the Roby trial, because she used it in cross-examining two of the State's witnesses.[3] Assuming that the prosecution's closing arguments in the two trials were indeed inconsistent,[4] Dunn knew or should have known so at the time of her trial or, at the latest, when she filed her first petition for postconviction relief.

 Dunn's claims are not "so novel" that their legal bases were not reasonably available to counsel when the first or second petitions for postconviction relief were filed, *Case v. State*, 364 N.W.2d 797, 800 (Minn. 1985), nor does fairness demand that we undertake substantive review of Dunn's contentions, *see Russell v. State*, 562 N.W.2d 670, 672 (Minn.1997). Dunn was represented by counsel in each of her earlier postconviction proceedings, either of whom could have raised the issue on her behalf, or she could have asserted such an argument on a *pro se* basis.[5] Moreover, Dunn challenged the effectiveness of her trial counsel in her second petition for postconviction relief, and this court upheld the postconviction court's denial of the petition. *See Dunn II*, 499 N.W.2d at 38–39. Accordingly, we hold that the post-

conviction court's summary denial of Dunn's petition was proper, and we decline to reach the merits of her claims. *See* Minn.Stat. § 590.04, subd. 3 (1996); *Hale v. State*, 566 N.W.2d 923, 926 (Minn.1997); *King v. State*, 562 N.W.2d 791, 795 (Minn.1997). We affirm.

---

**3.** In addition, we observe that media coverage of Roby's trial was extensive. *See, e.g.,* Paul Gustafson, *Conflicting Testimony Crucial in Roby Trial*, Star Trib. (Minneapolis), Aug. 31, 1989, at 7B.

**4.** Contrary to Dunn's assertion, the postconviction court found that the prosecutor at Dunn's trial merely highlighted the differences between the testimony of the witnesses and left it to the jury to decide whose testimony was more credible. *See supra* note 2 and accompanying text. In light of our resolution of Dunn's appeal, we need not examine this finding.

**5.** We reject outright Dunn's suggestion that her previous postconviction counsel "relied upon [Dunn] to raise the arguments [she] deemed important." It is clear from the petitions and briefs filed in the previous proceedings that Dunn's postconviction counsel thoroughly reviewed the record of her trial and, as such, would have been aware that Gary Roby also was tried and convicted in McIntyre's death.