**STATE of Minnesota, Respondent,**

v.

**Kelvin IRBY, Appellant.**

**No. C2–84–1790.**

Court of Appeals of Minnesota.

May 21, 1985.

Review Denied July 11, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Kathy King, Asst. Public Defender, University of Minn., Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Appellant Kelvin Irby's conviction of second degree felony murder, Minn.Stat. § 609.19(2) (1982) arose out of a stabbing incident in Minneapolis. Appellant claims the evidence is insufficient, he was denied a fair trial because of prosecutorial misconduct, inadequate instructions, exclusion of defense evidence, and that the trial court erred in imposing the presumptive sentence. We affirm.

## FACTS

On February 18, 1984 Bobby Trimble and appellant were living with Vicki Elting at 1801 LaSalle. Trimble was a pimp; Elting and appellant were prostitutes. Appellant has been suffering from a gender disorder the past two and one-half years and has been regularly dressing as a woman. On that date appellant spent much of the afternoon visiting with Glen King, preparing for dinner that night. Appellant expressed his unhappiness over Trimble's relationship with Vicki Elting. Appellant also told King that Trimble wanted appellant to "prostitute" that night. Appellant indicated to King that Trimble was going to "jump" on him if he didn't go and that appellant was going to stab Trimble. Appellant also asked King if he and Trimble could spend the night at King's apartment.

Appellant concocted a scheme to make Trimble think he was downtown prostituting. He and Trimble later returned to King's apartment around 10:45 p.m. Appellant gave $20 to King and instructed him to get some marijuana from Trimble. King did so and gave his apartment keys to Trimble who then left to go to Vicki Elting's apartment, in the building next door. Appellant went to Elting's apartment and found Trimble. They got into an argument and appellant walked away. Appellant returned looking for Trimble and was told that Trimble was out. Appellant said that he was "going to kick his [Trimble's] ass good."

Appellant took Trimble's topcoat during one of these visits. Appellant returned a third time to look for Trimble. He was eventually met by Trimble who asked for his coat. They argued. Appellant threw a beer bottle at Trimble and he left through the door.

Trimble chased appellant and caught up to him near the Plymouth Congregational Church at 19th and LaSalle. They scuffled in the street. Appellant stabbed Trimble with a knife and Trimble died from the wound. According to one of the State's witnesses, appellant threatened other witnesses with the knife.

Appellant went to King's apartment and said he'd stabbed Trimble. King took appellant's knife while appellant called the police. Appellant went back to Elting's apartment and told police Trimble "stuck himself." He later admitted stabbing Trimble and according to witnesses said "yah, I stuck him and if he would have got up I would have stuck him again."

At trial, appellant admitted he was a prostitute who passed himself off as a woman. He acknowledged that Trimble wanted a pimp-prostitute relationship and that he turned over about $200 from tricks to Trimble.

Appellant arranged to be with Trimble at King's place that evening to discuss their "situation." Testimony from State's witnesses indicated that appellant was jealous of Vicki Elting and sought to be with Trimble that night to engage in sex with him. Appellant testified that when he went back the third time looking for Trimble, he was trying to get King's keys back. He testi-

fied that Trimble angrily asked for his coat, and said "bitch, you been asking for this ass kicking" and slapped and pushed appellant. Appellant then picked up a bottle and threw it and ran. He had trouble running since he was wearing a dress and wore boots which did not provide a good grip. He testified that he thought Trimble would kill him. According to appellant, Trimble caught up to him and grabbed him by the jacket. Trimble threw appellant down in the street in the path of oncoming traffic and jumped on top of him. Appellant had a knife and while Trimble was choking him, stabbed Trimble in the chest.

Appellant was convicted of second degree felony murder and sentenced to the presumptive guidelines sentence of 127 months imprisonment.

### ISSUES

1. Was the evidence sufficient to sustain the conviction for second degree felony murder?

2. Did the prosecutor commit prejudicial misconduct at trial or in closing argument?

3. Were the jury instructions adequate?

4. Did the trial court err in excluding certain defense evidence?

5. Did the trial court err in sentencing appellant to the presumptive guidelines sentence?

### ANALYSIS

#### I.

■ Appellant claims the evidence was insufficient to show he did not act in self-defense. Viewing the evidence most favorable to the verdict, this contention is without merit.

#### II.

■ 1. In cross-examining the defense investigator the prosecutor discovered that the investigator had made notes and/or reports which had not been disclosed. The prosecutor stated, "Your Honor, I demand those notes and I think this ought to be looked into." On appeal appellant complains that it was improper for the prosecutor to voice his concern in front of the jury. We do not find the remark, although questionable, to be reversible error.

■ 2. We have reviewed appellant's additional claim that the prosecutor committed misconduct in closing argument and find such claim to be without merit.

#### III.

■ The trial court gave self-defense instructions listed in CRIMJIG 7.06 and approved of in *State v. Edwards*, 343 N.W.2d 269, 277 (Minn.1984). After deliberations, the jury returned with a question on assault. After this was answered a juror asked "Does that mean that anyone who acts in self-defense basically could be talked about as assaulting someone?" With agreement of all counsel, the trial court stated that if "the assault is done in self-defense, it is excused, and the defendant should be found not guilty. If the assault is not done in self-defense, it is not excused and the defendant should be found guilty." Appellant asserts that the court should have reinstructed the jury that the state must prove beyond a reasonable doubt that appellant did not act in self defense. The instructions which were originally submitted were sufficient.

#### IV.

1. Appellant challenges the trial court's ruling excluding evidence of several instances of prior misconduct of the victim Trimble. The trial court did allow into evidence several instances of violent acts of Trimble, including (a) that he burned his two year old baby in an oven; (b) that he set fire to Vicki Elting's apartment and threatened to kill the caretaker; (c) that he carried a knife at all times although none was found at his death; (d) that he threatened to cut up another pimp; (e) that he beat, kicked and strangled Vicki Elting. These incidents were all admitted to show appellant's state of mind as prior to the court's ruling appellant testified in chambers that he was aware of these incidents.

The trial court determined that they were relevant on appellant's claim of self-defense. *State v. Bland,* 337 N.W.2d 378 (Minn.1983); *State v. Taylor,* 258 N.W.2d 615 (Minn.1977).

The trial court also allowed reputation and opinion evidence of the victim's proclivity toward violence from several witnesses. *State v. Keaton,* 258 Minn. 359, 104 N.W.2d 650 (1960); *Bland,* 337 N.W.2d at 382. The trial court also allowed appellant to enter two misdemeanor convictions of Trimble (unlawful possession of a weapon and simple assault) into evidence.

■ The trial court refused to admit several prior instances of conduct where Trimble assaulted someone and one instance in which he stole from a police decoy. The trial court reasoned that appellant did not know of these instances and characterized appellant's request as "nothing more than bad, violent and quarrelsome character evidence introduced to show conformity with his bad character."

■ We agree with the trial court. If specific instances of conduct of the victim are offered by defendant to prove the defendant had a reasonable apprehension of harm, the evidence may be admissible if the prior conduct indicates a violent or quarrelsome disposition and if the defendant is aware of the prior conduct. *Bland,* 337 N.W.2d at 383; *Taylor,* 258 N.W.2d at 619–20; *State v. Matthews,* 301 Minn. 133, 134, 221 N.W.2d 563, 564 (1974).

■ If the prior misconduct is offered to show who is the aggressor, under Minn. R.Evid. 405 the evidence is not admissible unless the prior specific act is an element of a charge, claim or defense. In the case of self-defense, the specific instances of prior conduct is merely circumstantial evidence as to who is the aggressor and is not proof of an essential element of self-defense. Thus, the evidence is not admissible. *Bland,* 337 N.W.2d at 383 (quoting 2 D. Louisell and C. Mueller, Federal Evidence § 139 (1978)). Evidence of the victim's reputation for violence may be admitted; in this type of situation the defendant

need not be aware of the victim's reputation. *Keaton,* 258 Minn. at 367, 104 N.W.2d at 656.

The trial court gave this issue much consideration and its decision reflects a proper and careful analysis. We find no error in excluding the evidence.

■ 2. The trial court admitted a wealth of opinion testimony concerning Trimble, and excluded the non-expert opinion testimony of Donald Pugh. Pugh was a security manager for K-Mart who after a 1½ hour incident with Trimble, was prepared to testify that Trimble was unstable and unruly. The trial court cited the following standards: (1) The opinion must be based on the witness' perception, Minn.R. Evid. 602; (2) there must be a rational basis for the opinion, *State v. Hines,* 270 Minn. 30, 133 N.W.2d 371 (1964); and (3) the testimony must be helpful to the jury, Minn.R.Evid. 701; *In Re Hartz's Estate,* 237 Minn. 313, 318, 54 N.W.2d 784 (1952), and determined that Pugh could not properly form an opinion about Trimble's character after a single, short contact. The ruling that there was insufficient foundation to allow Pugh's testimony into evidence was correct and was not an abuse of discretion.

### V.

■ Appellant argues the trial court should have departed downward from the presumptive sentence. The trial court did not abuse its discretion in refusing to depart. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981).

### DECISION

Evidence was sufficient to sustain appellant's conviction. Appellant received a fair trial and was properly sentenced to 127 months imprisonment.

AFFIRMED.