STATE of Minnesota, Respondent,

v.

David Charles ANDERSON, Appellant.

No. C1–85–2276.

Court of Appeals of Minnesota.

Oct. 28, 1986.

Hubert H. Humphrey, III, State Atty. Gen., Alfred P. Zdrazil, City Atty., Bemidji, for respondent.

Mark L. Rodgers, Kief, Fuller, Baer, Wallner & Rodgers, Ltd., Bemidji, for appellant.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and LANSING, JJ.

## OPINION

FOLEY, Judge.

David Charles Anderson appeals from a December 9, 1985 judgment of conviction for being in physical control of a motor vehicle with an alcohol concentration over .10 in violation of Minn.Stat. § 169.-121, subd. 1(d) (1984). Anderson contends that the trial court committed reversible error by excluding a videotape of him made shortly after his arrest that was relevant to his physical condition and by admitting a urine test analysis into evidence without prior disclosure by the prosecutor. He also claims that the prosecutor's comments during voir dire constituted misconduct that substantially influenced the jury to convict. We affirm.

## FACTS

Early in the morning of April 4, 1985, Bemidji police officer Harlan Johnson was summoned to a restaurant parking lot where he found David Anderson asleep in his car with the motor running and the car doors locked. After waking Anderson, Officer Johnson read Anderson the implied consent form and, with Anderson's consent, administered a breathalyzer test which registered an alcohol concentration level between .103 and .106.

A half hour after Anderson's arrest for driving while under the influence of alcohol (DWI) in violation of Minn.Stat. § 169.121, subd. 1(a) and (b) and having an alcohol concentration over .10 in violation of Minn. Stat. § 169.121, subd. 1(d) and (e), a urine test was taken. Results of this test introduced by Anderson at trial reflected an alcohol concentration of .09.

During voir dire examination, the prosecutor erroneously made a statement to the effect that defense counsel had a "duty to try and convince the jury that his client is not guilty." On his own initiative, the prosecutor immediately corrected himself and informed the prospective jurors that his statement was in error. Anderson moved for a mistrial but the motion was denied.

At trial, after the prosecutor had dismissed the charges against Anderson based on violations of Minn.Stat. § 169.121, subd. 1(a), (b) and (e), Anderson sought to introduce a videotape of himself performing various physical tests shortly after his arrest to assist in showing the jury that "he was * * * totally in control of himself and his faculties." The prosecutor objected to introduction of the evidence, and the trial court sustained the objection on relevancy grounds, specifically that Anderson's performance during the physical tests had no bearing on whether his blood alcohol concentration level equaled or exceeded .10.

Anderson made no offer of proof as to the contents of the videotape or as to how his performance on the physical tests would be probative evidence on the level of alcohol concentration. Anderson did state that if the videotape was admitted, he would call witness Marshal Bourcy to testify as to her personal observations of his behavior that evening but did not elaborate on her proferred testimony.

Officer Johnson testified at trial concerning the operation of the breathalyzer test and the .10 reported value of Anderson's test. Don Neuenfeldt, an expert in toxicology of alcohol, testified for Anderson and explained that an inherent error of plus or minus .01 existed in the intoxilyzer test results.

As part of his rebuttal to Anderson's introduction of the .09 urine sample, the prosecutor presented the testimony of Robert Mooney, a Bureau of Criminal Apprehension (BCA) analyst, who produced a test reading of the same urine sample into three

digits—.095 and .098. Anderson objected on the ground that he was unfairly surprised by the testimony because it had not been previously disclosed by the prosecutor and because the testimony indicated that the result of the urine test was different from the .09 reading he had been given. The court overruled the objection, stating:

> The document basically, although I understand you haven't seen it before, doesn't really give any information different from what you were given. And I will allow the document into evidence.

At the close of the evidence, the trial court issued a curative instruction informing the jury that the prosecutor's remarks during voir dire had been erroneous. The jury returned its verdict of guilty against Anderson for violation of Minn.Stat. § 169.-121, subd. 1(d). This appeal followed.

### ISSUES

1. Did the trial court clearly abuse its discretion in excluding a videotape of Anderson shortly after his DWI arrest and other evidence relating to his physical intoxication?

2. Did the trial court clearly abuse its discretion in admitting a three-digit analysis of Anderson's urine sample?

3. Did the prosecutor's erroneous statement during voir dire examination that defense counsel had a duty to acquit his client substantially influence the jury to convict?

### ANALYSIS

■ 1. Anderson argues that the videotape of physical tests he performed is presumptively relevant under Minn.R.Evid. 401 and 402 and thus admissible because it would have aided the trier of fact in deciding whether his alcohol concentration was .10 or over. Generally, rulings on evidentiary matters fall within the sound discretion of the trial court. *State v. Andersen*, 370 N.W.2d 653, 664 (Minn.Ct.App. 1985).

We need not address the merits of the trial court's ruling because Anderson failed to preserve the issue for review by making a specific offer of proof relative to the contents of the videotape and the probative impact of the evidence in connection with the charged offense. Minn.R.Evid. 103(a). As the supreme court has succinctly stated:

> A court cannot assume the materiality of evidence not included in the record nor in any way disclosed, and in the absence of any showing of the nature and substance of such evidence, this court cannot determine whether it was erroneously excluded or if [the party seeking admission of the evidence] was prejudiced by such exclusion.

*State v. Wolkoff*, 250 Minn. 504, 519–20, 85 N.W.2d 401, 412 (1957) (footnote omitted); *see Garey v. Michelsen*, 227 Minn. 468, 476, 35 N.W.2d 750, 755 (1949) (trial court's exclusion of testimony in absence of offer of proof and any other evidence in the record from which materiality could be determined cannot constitute reversible error); *In re Estate of Olsen*, 357 N.W.2d 407, 413 (Minn.Ct.App.1984) (any prejudice from exclusion of expert testimony "difficult to assess without an offer of proof").

■ 2. Anderson contends that he was unfairly surprised by the introduction of urine analysis results by the BCA analyst when the prosecutor had not previously disclosed his intent to utilize such evidence. He compares this case to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which held that the prosecution violates a defendant's due process rights by withholding evidence that is material to guilt or punishment. However, the present case does not involve a *Brady* situation.

The prosecutor sought to establish Anderson's guilt on the basis of the breathalyzer result—.10—not on the results of the urine analysis. The urine analysis of .09 was introduced by Anderson, thus opening the door for rebuttal by the prosecution. Under these circumstances, Anderson's claim of unfair surprise is not persuasive. The BCA analyst's testimony was simply more precise. More important, even with

the three-digit analysis, Anderson's alcohol content as determined by urine analysis was still less than .10. As such, the evidence was actually favorable to the defense.

3. Anderson finally argues that the prosecutor's remarks during voir dire substantially influenced the selected jurors to convict. This argument is speculative at best. The prosecutor immediately corrected himself after the remark was made and the court subsequently gave a curative instruction.

Anderson bases his argument on a case which is distinguishable. In *State v. Rule*, 355 N.W.2d 496 (Minn.Ct.App.1984), the prosecutor commented during *closing argument* on the defendant's failure to present evidence justifying his claim of self-defense. No curative instruction was given. This court reversed, stating:

> The standard for reviewing whether prosecutor misconduct is harmless depends on how egregious the conduct is.
>
> [I]n cases involving unusually serious prosecutorial misconduct this court has required certainty beyond a reasonable doubt that the misconduct was harmless before affirming. * * * On the other hand, in cases involving less serious prosecutorial misconduct this court has applied the test of whether the misconduct likely played a substantial part in influencing the jury to convict.

*Id.* at 498 (quoting *State v. Caron*, 300 Minn. 123, 127–128, 218 N.W.2d 197, 200 (1974)).

In view of the corrective measures taken, the prosecutor's comments, even though blatantly erroneous, cannot be said to have substantially influenced the jury to convict in this case.

### DECISION

Appellant's conviction under Minn.Stat. § 169.121, subd. 1(d) is affirmed.

Affirmed.